E-FILED IN OFFICE - NV
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**21-A-00667-8**
**1/28/2021 6:07 PM**
CLERK OF SUPERIOR COURT

# IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**The City of Roswell, Georgia**

PLAINTIFF

CIVIL ACTION
NUMBER: **21-A-00667-8**

VS.

**Argonaut Great Central Insurance Company**

**and Colony Specialty Insurance Company**

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Richard L. Robbins and Catherine C. Berenato**
**Robbins Ross Alloy Belinfante Littlefield LLC**
**500 14th Street, N.W.**
**Atlanta, Georgia 30318**
**(678) 701-9381**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____**28**_____ day of _____**JANUARY**_____, 20_**21**_.

Tiana P. Garner
Clerk of Superior Court

By _____
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**



HZC / ALL
**Transmittal Number: 22683631**
**Date Processed: 01/29/2021**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Audrey Richards<br>Argo Group US, Inc.<br>175 E Houston St<br>Ste 1300<br>San Antonio, TX 78205-2265 |
| **Electronic copy provided to:** | Esequiel Contreras<br>Heather Gmyrek |

| | |
|---|---|
| **Entity:** | Argonaut Great Central Insurance Company<br>Entity ID Number  3655974 |
| **Entity Served:** | Argonaut Great Central Insurance Company |
| **Title of Action:** | The City of Roswell, Georgia vs. Argonaut Great Central Insurance Company |
| **Matter Name/ID:** | The City of Roswell, Georgia vs. Argonaut Great Central Insurance Company (10909247) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Gwinnett County Superior Court, GA |
| **Case/Reference No:** | 21-A-00667-8 |
| **Jurisdiction Served:** | Georgia |
| **Date Served on CSC:** | 01/29/2021 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Richard L. Robbins<br>678-701-9381 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

FILED IN OFFICE
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORG
**21-A-00667-**
**1/28/2021 6:07 PI**

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

### STATE OF GEORGIA

*Tiana* CLERK OF SUPERIOR COUE

The City of Roswell, Georgia

CIVIL ACTION **21-A-00667-8**
NUMBER:

PLAINTIFF

VS.

Argonaut Great Central Insurance Company

and Colony Specialty Insurance Company

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Richard L. Robbins and Catherine C. Berenato**
**Robbins Ross Alloy Belinfante Littlefield LLC**
**500 14th Street, N.W.**
**Atlanta, Georgia 30318**
**(678) 701-9381**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ___**28**___ day of ___**JANUARY**___, 20___**21**___.

Tiana P. Garner
Clerk of Superior Court

By_____
Deputy Clerk

**INSTRUCTIONS:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

# IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| THE CITY OF ROSWELL,<br>GEORGIA,<br><br>    Plaintiff,<br><br>v.<br><br>ARGONAUT GREAT CENTRAL<br>INSURANCE COMPANY AND<br>COLONY SPECIALTY INSURANCE<br>COMPANY,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION FILE
**21-A-00667-8**
NO. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff the City of Roswell ("the City") files this Complaint for damages against Defendants Argonaut Great Central Insurance Company and Colony Specialty Insurance Company (collectively, "Argonaut")[1] and states as follows:

## INTRODUCTION

This is an insurance coverage dispute of significant impact to the City and its taxpayers. The City obtained an insurance policy from Argonaut. One of the buildings covered by the policy was the Roswell-Alpharetta Public Safety Training Center ("RAPSTC") – a training facility for fire, police, emergency medical

---

[1] Out of an abundance of caution, the City files suit against Colony Specialty Insurance Company (as well as Argonaut Great Central Insurance Company) because opposing counsel refers to the insurance company interchangeably as "Argonaut" and "Colony." Despite repeated requests, opposing counsel has not confirmed the identity of the entity liable on the insurance policy at issue.

professionals and other first responders. In late 2017, a snowstorm hit the RAPSTC building and damaged the roof, trusses, and other portions of the building.

After a concerning delay on Argonaut's part, in June 2018 Argonaut finally provided a scope of work from which contractors were to submit bids for the repairs to RAPSTC. However, the scope of work was deficient – it only addressed repairs to the roof and did not include repairs and/or protection that would need to be provided to much of the RAPSTC's interior. Argonaut did not seek the City's prior input on the scope of work.

Two main contractors submitted bids for the repairs based on the scope. Choate Construction Company ("Choate"), after a cursory inspection of the building, submitted a low bid, but its estimate did not include all of the needed interior work. Turner Construction Company ("Turner") submitted a higher bid, but it included all of the appropriate work. Turner was very familiar with the building having performed the earlier shoring work on it. Certain other contractors would not even bid based on the scope of work due to how limited it was. After yet more delay on Argonaut's part and after much had already been spent on rental space to house the RAPSTC employees while their building was not yet repaired, the City decided to select Turner to do the repairs. The insurance policy does not require an insured to select the lowest bidder or to use only a contractor approved by the insurer.

Turner completed the work in June 2020.  The construction projects, along with all of the extra expenses (such as leasing a temporary space, storing equipment, etc.) cost **$2,367,576.82**.  Argonaut has paid only **$1,072,007.23**.  This leaves a difference due of **$1,295,569.59** (The City is not claiming certain expenses that it agrees Argonaut need not pay).

It is still not clear why Argonaut has refused to pay the remaining balance. The City sent Argonaut hundreds of pages of documents that evidence the expenses it has had to pay to repair the RAPSTC building.  It does not appear that Argonaut even reviewed these documents.  As of July 2020, Argonaut has said only that is "investigating."  Even though the City provided detailed charts of each expense it incurred (along with the backup documentation), Argonaut apparently has not gone through the charts, let alone the documents, to indicate what it will and will not cover.

While Argonaut has generally communicated that it does not wish to cover the remaining expenses, it has not provided a detailed denial-of-coverage letter such that the City has had to guess which provisions of the policy Argonaut is invoking. Argonaut's actions have not only served to waive any defenses it may have, such actions also demonstrate bad faith.  This entitles the City not only to the amount outstanding (**$1,295,569.59**), but also attorneys' fees, expenses, and a 50 percent

penalty, for a total of at least **$1,943,354.38** (plus attorneys' fees and expenses). O.C.G.A. § 33-4-6.

## PARTIES, JURISDICTION, AND VENUE

1.

The City of Roswell is a city in Fulton County, Georgia.

2.

Argonaut Great Central Insurance Company, which does business in Georgia, is an Illinois insurance company with a principal office in San Antonia, Texas, and a registered agent located in Gwinnett County at 40 Technology Pkwy South, #300, Norcross, Georgia, 30092.

3.

Colony Specialty Insurance Company, which does business in Georgia, is an insurance company with a principal office in Richmond, Virginia, and a registered agent located in Gwinnett County at 40 Technology Pkwy South, #300, Norcross, Georgia, 30092.

4.

The parties to this case are subject to the jurisdiction of this Court.

5.

This Court is a proper venue for this matter.

## THE POLICY

6.

Argonaut provided coverage to the City under a Commercial Property policy (the "Policy") numbered PE-46217875-08.  Certain portions of the lengthy Policy are attached as **Exhibit A**.

7.

The Policy covered the period when RAPSTC was damaged.  [Ex. A at 1].

8.

The Policy covered the RAPSTC building (Building 14 under the Policy). [Ex. A at 2].

9.

Per Argonaut, the Policy's terms included: a limit of liability of $1,450,800 with a 125% margin clause, for a limit of liability of $2,307,250 plus extra expense. The deductible was $10,000.  [Exhibit B].

10.

The Policy states: "[Argonaut] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." [Ex. A at 3].  RAPSTC was listed in the Declarations as a Covered Property.  [Ex. A at 2].

11.

It also states:

> [Argonaut] will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this Coverage Form, if the collapse is caused by [weight of snow] . . . If the collapse occurs after construction, remodeling or renovation is complete and is caused in part by [weight of snow] [Argonaut] will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

[Ex. A at 7].

12.

The Policy provides that Argonaut will pay for certain construction necessitated by the need to comply with certain laws like building, zoning or land use ordinances or law. [Ex. A at 5].

13.

It also provides that Argonaut will pay for extra expense and loss of business income as a result of a covered loss. [See Ex. A at 6].

## THE SNOW EVENT

14.

On December 8, 2017, an unexpectedly large snowstorm hit the City and damaged the RAPSTC building.

15.

When RAPSTC employees entered the building the next week, they found drywall chips on the floor and soon realized that the roof had partially collapsed under the weight of the snow.

16.

Due to the dangerous condition, the building was evacuated.

17.

Shortly after, the City's Deputy Fire Chief contacted an architectural firm and a structural engineer to determine needed repairs.

**SHORING WORK**

18.

The engineers determined that RAPSTC would need to be shored to temporarily support the building.

19.

It was also determined that there was a defect in the roof trusses caused by faulty assembly that in-part caused the joints in the trusses to fail when the snow fell.

20.

Argonaut does not dispute that the damage to the roof and trusses is damage the Policy covers.

21.

The City contacted Turner, a trusted contractor, to meet with it and the architects to discuss the shoring work.

22.

Right after the damage was discovered, the City also notified Argonaut about the event, and an adjuster was assigned to the claim.

23.

After discussions regarding the shoring, Argonaut issued its first check to the City for a $35,000 advance in December 2017.

24.

After much back and forth between the City and Argonaut's engineer, the City and Turner entered into a shoring contract in January 2018 because the shoring needed to be done right away.

25.

Shortly thereafter, Argonaut issued another check to the City for $98,808 (an advance for relocating, rent, demolition, and ceiling removal).

26.

Once the shoring was underway, in February of 2018 the RAPSTC employees had to move into a rental building and were working without internet, printers, and other necessities.

27.

Additionally, the training equipment had to be removed from the RAPSTC building and stored for safekeeping.

28.

The City was required to pay rent for the leased building and the storage, along with other extra expenses.

## SCOPE AND BIDS

29.

In February 2018, Turner completed the shoring work, which was approved by Argonaut's engineer.

30.

The next work included the actual repairs to the RAPSTC building – the shoring merely stabilized the structure.

31.

Around this time, for some reason Argonaut switched the adjusters on the claim.

32.

In February 2018, even though the City was working on getting the scope itself, Argonaut's adjuster told the City during a meeting that he would be providing a scope of work so that the City could solicit bids for the remaining work.

33.

In the meantime, Argonaut issued two other checks to the City – one for $613,402.99 (building coverage) and one for $30,021 (extra expense).

34.

In March 2018, the City emailed Argonaut to point out that the work on the RAPSTC building had stalled because Argonaut had not yet provided a scope of work such that the City could not get any bids on the actual repairs.

35.

A month later, Argonaut told the City it was going to get a scope of work from Wiss, Janney, Elstner Associates, Inc. ("WJE") and that the scope only related to removing and replacing the roof.

36.

When the City expressed some frustration with the project's delay, the adjuster curtly retorted that "It is the responsibility of City of Roswell to present their claim . . . We will not effect the repairs."

37.

Months went by with no scope of work from Argonaut, such that the City continued to wait until it could send the scope to contractors to obtain bids for the remainder of the work.

38.

All the while, RAPSTC employees were working without internet in their temporary location, and rent accrued.

39.

Finally, in early June 2018, Argonaut sent the City the scope of work it procured from WJE.

40.

However, the WJE scope only addressed repairs to the roof of the RAPSTC building; it did not include work that, as a result of the snow event, would need to be done to, among other things, parts of RAPSTC's interior such as the piping, floors, HVAC, drywall, sprinkler system, ceiling, lighting, and other systems (the "additional work").

41.

In any event, as this was the only scope of work that Argonaut had provided, it was sent to several contractors in order to receive bids for the repair work.

42.

First, Choate provided a bid for the repairs, which totaled $967,866. This bid did not include all of the needed additional work.

43.

Second, Turner provided a bid for $1,834,178, and it did contemplate the additional work in its bid – it had to in to order to limit its risk and because such work would have to be done.

44.

At this point, it became clear that Argonaut wanted the City to hire Choate for the job due to its lower bid.

45.

The City wanted Turner to do the job because Turner accounted for all the work that would actually have to be done to the RAPSTC, not just removing and replacing of the roof.

## THE INSURER/INSURED DISCUSSIONS ARE UNPRODUCTIVE AND THE CITY MOVES FORWARD

46.

After an agreement could not be reached between the City and Argonaut regarding which construction company to use, the City requested additional bids.

-12-

47.

One contractor provided a bid for $946,532, which also only addressed the roof replacement and removal.

48.

That contractor, though, told the City the additional work would have to be addressed at some point with a change order.

49.

Another contractor responded to the scope to indicate that it was too vague and limited for them to provide a bid.

50.

Yet another said the same.

51.

Shortly after the bids were received and a back and forth between the parties, Argonaut's adjuster emailed the City in August 2018 to say, "[Argonaut] is not repairing your building," which signaled to the City that it could proceed with the repairs as it saw fit.

52.

A few months went by of working with engineers to determine if the building was structurally sound enough to take on the construction, and it was determined that it was.

-13-

53.

In March 2019, Argonaut issued another check to the City for $46,617.23 for extra expense.

54.

In March 2019, Turner (the City's preferred contractor based on its bid) and the City entered into a construction contract for the rebuild project, and Turner was finally able to begin repairing RAPSTC.

55.

Argonaut was aware of this, and finally construction began on the repairs with Turner at the helm.

56.

Months later, the City received a letter from Argonaut, which, *inter alia*, expressed his discontent that Turner had been chosen to contract with the City; that certain mold work Turner was doing was not related to the snow event; and that the WJE scope of work did not cover the additional work Turner was doing.

57.

This was despite the fact that the City was free to choose whomever it wished to complete the construction; that the City agreed that Argonaut was not responsible for certain mold work; and that any contractor who worked on the RAPSTC building

repair would have had to eventually address the additional work – despite the fact that the initial WJE scope did not include the additional work.

58.

The dispute triggered an informal attempt for Argonaut and the City to come to an agreement and resolve their differences.

59.

Due to the discontent between the City and Argonaut, both decided to enter into a tolling agreement that tolled the time period by which the City had to bring a legal claim against Argonaut – the period is now extended until January 31, 2021.

60.

By January 2020, Turner was nearing completion of the RAPSTC repairs.

61.

However, in February of 2020, the City received another letter from Argonaut that again stated, *inter alia*, that it was displeased that the City chose Turner over Choate, and that even though the City chose Turner, Argonaut's payments to the City were only based on the Choate bid.

62.

Argonaut also argued that the City did not competitively bid the project (even though it sent out WJE's scope for several bids and competitive bidding was not a

requirement under the Policy), and it asked for additional information regarding the project costs from the City.

63.

In conjunction with the letter, Argonaut issued another check to the City for $248,158.01 for the construction. This was the last check Argonaut issued.

## THE BUILDING IS COMPLETED AND DISCUSSIONS
## AGAIN DO NOT RESOLVE THE COVERAGE DISPUTE

64.

In June 2020 (two and a half years after the snow event and after much back and forth with Argonaut), the RAPSTC building was finally repaired.

65.

Shortly after, on July 14, 2020, Argonaut again wrote to the City, saying that it understood that the RAPSTC building was repaired; and reminding the City that Argonaut only had been making payments to the City based off of the Choate bid. This letter is attached hereto as **Exhibit B**.

66.

It noted that the payments have already exceeded that Choate estimate.

67.

It also asked for a detailed accounting and support for all outstanding costs that the City believed it was owed.

-16-

68.

The letter stated that "Argonaut continues in its investigation of the claim," despite the fact that RAPSTC had been damaged nearly three years prior.

69.

In a prompt response, the City mailed Argonaut a letter that provided hundreds of pages of documentary support for all of the City's costs incurred as a result of the snow event.

70.

In that letter, the City noted that the total loss was $2,367,576.82; that Argonaut had paid the City $1,072,007.23; and that there was an outstanding balance of $1,295,569.59. The City specifically excluded costs for certain work that the City agreed was not covered by the Policy. The City also asked that Argonaut's payment to the City be made by the end of July 2020.

71.

Even though the City provided detailed charts of each expense it incurred (along with the backup documentation), Argonaut apparently has not gone through the charts, let alone the documents, to indicate what it will and will not cover.

72.

In fact, Argonaut did not follow up with the City regarding this letter, and it has never provided a detailed denial-of-coverage letter such that the City has had to guess which provisions of the Policy Argonaut is invoking to shield it from liability.

73.

In October 2020, the City sent another letter as a follow up to their prior one, noting that Argonaut was refusing to pay the City in bad faith and demanding that Argonaut pay the outstanding amount.

74.

Despite this, Argonaut has not paid the full amount due to the City to this day, without even a review of the records supporting its claim and without a denial letter.

75.

Argonaut's actions have not only served to waive any defenses it may have thought to bring under the Policy, its actions also have been in bad faith, which entitles the City not only to the amount outstanding, but also to attorneys' fees and 50 percent of Argonaut's liability.

## COUNT I: BREACH OF CONTRACT

76.

The City incorporates by reference the allegations contained in paragraphs 1 through 75 of this Complaint as though fully set forth herein.

77.

Argonaut entered into an agreement with the City via the Policy.

78.

The Policy covers the loss the City claims.

79.

The City complied with Argonaut's various requests and with the Policy.

80.

Argonaut breached the Policy by not paying the City the costs it incurred to repair the RAPSTC building, even though the costs the City seeks are covered costs.

81.

Argonaut's breach of the Policy proximately caused the City to suffer damages in an amount to be determined at trial.

## COUNT II: BAD FAITH FAILURE TO PAY THE LOSS

82.

The City incorporates by reference the allegations contained in paragraphs 1 through 81 of this Complaint as though fully set forth herein.

83.

Argonaut entered into an agreement with the City via the Policy.

84.

The Policy covered the loss the City claims.

85.

The City sent a demand to Argonaut to pay the outstanding amount

Argonaut owed to the City under the Policy, pursuant to O.C.G.A. § 33-4-6.

86.

Argonaut failed to pay the City the demanded amount, which was in bad faith

because the City: complied with the Policy and Argonaut's requests; provided

Argonaut with hundreds of pages of documentation for the expenses it incurred;

requested payment several times from Argonaut; and was never given a legitimate

reason for the refusal from Argonaut.  It appears Argonaut has not even reviewed

the documentation the City provided.

87.

There was no good cause for Argonaut to fail to pay the City.

88.

The City is entitled to receive payment for the loss it incurred due to the

damage of the RAPSTC building, plus 50 percent of the liability of Argonaut for the

loss, plus all reasonable attorney's fees for the prosecution of the action against

Argonaut.

## COUNT III: ATTORNEYS' FEES AND EXPENSES OF LITIGATION

89.

The City incorporates by reference the allegations contained in paragraphs 1 through 88 of this Complaint as though fully set forth herein.

90.

Argonaut has acted in bad faith, has been stubbornly litigious, and has caused the City to incur unnecessary trouble and expenses, within the meaning of O.C.G.A. § 13-6-11. Accordingly, Argonaut is liable for the City's attorneys' fees and expenses of litigation.

91.

Additionally, as noted, pursuant to O.C.G.A. § 33-4-6, the City may recover its reasonable expenses, including reasonable attorneys' fees, if a finding is made (as it should be) that Argonaut refused in bad faith to pay the City's loss that resulted due to the damage to the RAPSTC building.

## PRAYER FOR RELIEF

The City prays that judgment be entered in its favor against Argonaut and prays for the following relief:

(a)    That the City be awarded compensatory damages against Argonaut in an amount to be determined at trial;

-21-

(b)    That the City be awarded reasonable expenses, including reasonable attorneys' fees for pursuing this action against Argonaut;

(c)    That the City be awarded all remedies authorized by law; and

(d)    That the City be awarded any other relief that the Court deems just and proper.

## **<u>JURY DEMAND</u>**

The City hereby demands a trial by jury on all claims triable.

Respectfully submitted this 28th day of January 2021.

> */s/ Richard L. Robbins*
> Richard L. Robbins
> Georgia Bar No. 608030
> rrobbins@robbinsfirm.com
> Catherine C. Berenato
> Georgia Bar No. 957620
> cberenato@robbinsfirm.com
> Robbins Ross Alloy Belinfante Littlefield LLC
> 500 14th Street, N.W.
> Atlanta, GA  30318
> Telephone:  (678) 701-9381
> Facsimile:  (404) 856-3255
>
> *Attorneys for Plaintiff*

# Exhibit A

# COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Policy No. PE-4617875-08                    Renewal of: PE-4617875-07

**NAMED INSURED:**

City of Roswell, Georgia
38 Hill Street, Suite G-60
Roswell, GA 30075

**ITEM 1.   POLICY PERIOD:**

FROM: 05/01/2017      **TO:** 05/01/2018
12:01 A.M. standard time at your mailing address shown above.

**ITEM 2.   LIMITS OF INSURANCE:**

**$176,647,759 BLANKET LIMIT OF INSURANCE. HOWEVER, WE WILL NOT PAY MORE THAN 125% OF THE APPLICABLE BUILDING LIMIT OF INSURANCE OR PERSONAL PROPERTY LIMIT OF INSURANCE SHOWN IN THE SUPPLEMENTAL DECLARATIONS IN ANY ONE OCCURRENCE.**

**ITEM 3.   FORMS AND ENDORSEMENTS CONTAINED IN THIS POLICY AT ITS INCEPTION:**

SEE POLICY FORMS LIST

**ITEM 4.   TOTAL PREMIUM:** $188,115

CP-DEC (07/00)              © Copyright Argonaut Insurance Group 2000.  All rights reserved.

| PREM # | Occupancy | | Address | Const. |
|---|---|---|---|---|
| 13 | Fire Station #6 | | 825 Cox Road | Frame |
| BLDG # | Building Limit of Insurance | | Personal Property Limit of Coverage | |
| 1 | $1,556,200 | | $164,000 | |
| | Cause of Loss | Co Insurance Percentage | | |
| | Special | 90 | | |
| | Value Option | Deductible | Mortgage | |
| | RC | $10,000 | No | |
| | Agreed Value Expiration Date | | Inflation Guard % | |
| | | | 3 | |

| PREM # | Occupancy | | Address | Const. |
|---|---|---|---|---|
| 14 | Maxwell Street Police Fire Training - Public Safety Building | | 11565 Maxwell Road | NC |
| BLDG # | Building Limit of Insurance | | Personal Property Limit of Coverage | |
| 1 | $1,845,800 | | $401,000 | |
| | Cause of Loss | Co Insurance Percentage | | |
| | Special | 90 | | |
| | Value Option | Deductible | Mortgage | |
| | RC | $10,000 | No | |
| | Agreed Value Expiration Date | | Inflation Guard % | |
| | | | 3 | |

| PREM # | Occupancy | | Address | Const. |
|---|---|---|---|---|
| 14 | Maxwell Street Police Fire Training- Fire Training Burn Building | | 11565 Maxwell Road | NC |
| BLDG # | Building Limit of Insurance | | Personal Property Limit of Coverage | |
| 2 | $402,293 | | $318,270 | |
| | Cause of Loss | Co Insurance Percentage | | |
| | Special | 90 | | |
| | Value Option | Deductible | Mortgage | |
| | RC | $10,000 | No | |
| | Agreed Value Expiration Date | | Inflation Guard % | |
| | | | 3 | |

| PREM # | Occupancy | | Address | Const. |
|---|---|---|---|---|
| 15 | Fire Station #7 | | 8025 Holcomb Bridge Road | Frame |
| BLDG # | Building Limit of Insurance | | Personal Property Limit of Coverage | |
| 1 | $1,871,500 | | $198,000 | |
| | Cause of Loss | Co Insurance Percentage | | |
| | Special | 90 | | |
| | Value Option | Deductible | Mortgage | |
| | RC | $10,000 | No | |
| | Agreed Value Expiration Date | | Inflation Guard % | |
| | | | 3 | |

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION **H** – DEFINITIONS.

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

Argonaut Group, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1994

2. Debris Removal; but if:

   a. The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

   b. The debris removal expense exceeds the amount payable under the 25% limitation in the Debris Removal Additional Coverage;

we will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

## D. DEDUCTIBLE

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible, up to the applicable Limit of Insurance, after any deduction required by the Coinsurance condition or the Agreed Value Optional Coverage.

When the occurrence involves loss to more than one item of Covered Property and more than one Limit of Insurance applies, the Deductible will reduce the total amount of loss payable if loss to at least one item is less than the sum of (1) the Limit of Insurance applicable to that item plus (2) the Deductible.

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

   Deductible: $250

| | |
|---|---|
| Limit of Insurance – Bldg. 1: | $60,000 |
| Limit of Insurance – Bldg. 2: | $80,000 |
| Loss to Bldg. 1: | $60,100 |
| Loss to Bldg. 2: | $90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

$$\begin{array}{r} \$60,100 \\ -\ \ \ 250 \\ \hline \$59,850 \ \text{Loss Payable – Bldg. 1} \end{array}$$

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139, 850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

| | |
|---|---|
| Loss to Bldg. 1: | $70,000 (exceeds Limit of Insurance plus Deductible) |
| Loss to Bldg. 2: | $90,000 (exceeds Limit of Insurance plus Deductible) |
| Loss Payable – Bldg. 1: | $60,000 (Limit of Insurance) |
| Loss Payable – Bldg. 2: | $80,000 (Limit of Insurance) |

Total amount of loss payable: $140,000

## E. LOSS CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

   a. You must see that the following are done in the event of loss or damage to Covered Property:

      (1) Notify the police if a law may have been broken.

Argonaut Group, Inc.
Copyright, ISO Commercial Risk Services, Inc., 1994

**(ii)** Regulates the construction or repair of buildings, or establishes zoning or land use requirements at the described premises, and

**(iii)** Is in force at the time of loss.

**(b)** Coverage B - Demolition Cost Coverage.

If a Covered Cause of Loss occurs to your covered Building property, we will pay the cost to demolish and clear the site of undamaged parts of the property caused by enforcement of building, zoning or land use ordinance or law.

The most we will pay under this extension is $100,000.

The COINSURANCE Additional Condition does not apply to Demolition Cost Coverage.

**(c)** Coverage C - Increased Cost of Construction Coverage.

If a Covered Cause of Loss occurs to your covered Building property, we will pay for the increased cost to repair, rebuild or construct the property caused by enforcement of building, zoning or land use ordinance or law. If the property is repaired or rebuilt, it must be intended for similar occupancy as the current property, unless required by zoning or land use ordinance or law.

However, we will not pay for the increased cost of construction if the building is not repaired or replaced.

The most we will pay under this extension is $100,000.

The COINSURANCE Additional Condition does not apply to Increased Cost of Construction.

**(2)** We will not pay for the costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

**(3)** Under Coverage A - Coverage for Loss to the Undamaged Portion of the Building:

**(a)** If the Replacement Cost Coverage Option applies and the property is repaired or replaced, on the same or another premise, we will not pay more for loss or damage to Covered Property, including loss caused by enforcement of an ordinance or law, than the lesser of:

**(i)** The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

**ii)** The Limit of Insurance applicable to the Covered Building property.

**(b)**         i) If the Replacement Cost Coverage option applies and the Covered Building property is not . repaired or replaced; or
**ii)**   If the Replacement Cost Coverage option does not apply:

we will not pay more for loss or damage to Covered Property, including loss caused by enforcement of an ordinance or law, than the lesser of:

**a)**   The actual cash value of the building at the time of loss; or

**b)**   The Limit of Insurance applicable to the covered Building property.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## 360 © INCREASED LIMIT OF INSURANCE

This endorsement modifies insurance under the following:

360 - Additional Coverage Enhancements - Commercial Property

In consideration of the premium charged, it is hereby agreed and understood that the following  changes are made to the coverages indicated with a "☒ " below:

Additional Premium:  $ <u>INCLUDED</u>

| COVERAGE | ORIGINAL LIMIT OF INSURANCE | REVISED LIMIT OF INSURANCE | Deductible |
|---|---|---|---|
| ☐ Accounts Receivable | $ 100,000 | $ | $ |
| ☐ Building Ordinance | Coverage B-Demolition Cost $100,000<br>Coverage C-Increased Cost of Construction $100,000 | Coverage B-Demolition Cost $<br>Coverage C-Increased Cost of Construction $ | $<br><br>$ |
| ☐ Communication Equipment | $50,000 | $ | $ |
| ☒ Computer Equipment | $50,000 | $500,000 | $10,000 |
| ☐ Detached Signs | $5,000 | $ | $ |
| ☒ Extra Expense and Business Income | $100,000 | $1,775,000 | $10,000 |
| ☒ Fine Arts | $50,000 | $500,000 | $10,000 |
| ☐ Money, Securities and Stamps | Inside Premise    $5,000<br>Outside  Premise  $5,000 | Inside Premise      $<br>Outside  Premise  $ | $<br>$ |
| ☐ Personal Effect and Property of Others | Any one employee or volunteer $1,500<br>Any one occurrence  $50,000 | Any one employee or volunteer   $<br>Any one occurrence  $ | $<br><br>$ |
| ☐ Property In Transit | $50,000 | $ | $ |
| ☐ Valuable Papers and Records | $100,000 | $ | $ |
| ☐ | | | |
| ☐ | | | |
| ☐ | | | |

             © Copyright Argonaut Insurance Group 2000.  All rights reserved.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.4.**, does not apply to Business Income coverage or to Extra Expense coverage.

**5.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income coverage or to Extra Expense coverage.

**D. ADDITIONAL COVERAGE – COLLAPSE**

The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in **D.1.** through **D.5.** below.

**1.** We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this Coverage Form, if the collapse is caused by one or more of the following:

**a.** The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

**b.** Hidden decay;

**c.** Hidden insect or vermin damage;

**d.** Weight of people or personal property;

**e.** Weight of rain that collects on a roof;

**f.** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **D.1.a.** through **D.1.e.**, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

**2.** If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

**a.** The personal property which collapses is inside a building; and

**b.** The collapse was caused by a cause of loss listed in **D.1.a.** through **D.1.f.** above.

**3.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

**h.** Retaining walls; and

**i.** Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in **D.1.b.** through **D.1.f.**, we will pay for loss or damage to that property only if:

**a.** Such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

**b.** The property is Covered Property under this Coverage Form.

**4.** Collapse does not include settling, cracking, shrinkage, bulging or expansion.

**5.** This Additional Coverage – Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**E. ADDITIONAL COVERAGE EXTENSIONS**

**1. Property In Transit.** This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

# Exhibit B

 **ARGO GROUP**

Get there together

July 14, 2020

City of Roswell
Attn: Tony Papoutsis
1810 Hembree Road
Alpharetta, GA  30009

RE:   Insurer:              Argonaut Great Central Insurance Company
      Our Insured:          City of Roswell
      Policy Number:        PE 4617875-07
      Policy Term:          5/1/2017 – 5/1/2018
      Claim Number:         TNT-0144487
      Date of Loss:         December 8, 2017

Dear Mr. Papoutsis:

I understand that the final repairs are completed and that the City has received occupancy following the renovation and improvements elected by the City.

Argonaut Great Central Insurance Company provides coverage under policy number PE-4617875-08, which provides a Limit of Liability of $1,450,800 for Building 14, Premise 1, with a 125% Margin Clause for a new Limit of Liability of $2,307,250, plus coverage for Extra Expense.

To date City of Roswell has been paid a total of $1,072,007.02, which includes  $995,369.00 for RCV Building damage and $76,638.23 for Extra Expense.   A $10,000 Deductible applies.  This building repair amount reflects the $967,866.00 bid amount by Choate Construction dated June 22, 2018.

I would ask that you please provide me with a detailed accounting and support for any costs you believe remain outstanding and unpaid for review.

Argonaut continues in its investigation of the claim and requires your cooperation.  As our investigation of the claim continues, we may need additional information and may have additional questions.

Thank you in advance and I look forward to the information as outlined.  I can be reached at (210) 321-6538 should you need assistance with this request.

Please send the information directly to CommercialClaimsMail@argogroupus.com with the Claim # identified in the "Subject".

Argonaut continues to reserve its right under the policy of insurance and at law.

Sincerely,

*Thomas J. Counts*

Argonaut Great Central Insurance Company

Cc:  Brandon Hensley, email

P.O. Box 469013 San Antonio, TX 78246   Telephone 210-321-6538

E-FILED IN OFFICE - NV
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**21-A-00667-8**
**1/28/2021 6:07 PM**

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

CLERK OF SUPERIOR COURT

|  |  |  |
|---|---|---|
| THE CITY OF ROSWELL, GEORGIA, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. **21-A-00667-8** _____ |
| ARGONAUT GREAT CENTRAL INSURANCE COMPANY AND COLONY SPECIALTY INSURANCE COMPANY, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR
## APPOINTMENT OF A SPECIAL PROCESS SERVER

COMES NOW the above-referenced Plaintiff, pursuant to O.C.G.A. § 9-11-4(c), and shows this Court that expedited service on the Defendants is necessary and requests the appointment of a special process server to serve the Defendants with Summons and Complaint, to Defendants as authorized under the law.

WHEREFORE, Plaintiff moves this Court for an Order appointing Amy Ferrero, Christine O'Leary, and/or Katherine Bolling who are agents of Legal Ease Attorney Services, Inc., and not interested parties to this suit; who are citizens of the United States and eighteen years of age or older, to serve the Defendants with process, and to make a return on that service pursuant to O.C.G.A. § 9-11-4(c).

Respectfully submitted this 28th day of January 2021.

/s/ Richard L. Robbins
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
Catherine C. Berenato
Georgia Bar No. 957620
cberenato@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, GA  30318
Telephone:  (678) 701-9381
Facsimile:  (404) 856-3255

Attorneys for Plaintiff

CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
21-A-00667-
1/29/2021 12:35 PI

*Tiana P. Garner*
CLERK OF SUPERIOR COURT

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

|  |  |  |
|---|---|---|
| THE CITY OF ROSWELL, GEORGIA, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE |
| v. | ) ) ) | **21-A-00667-8**<br>NO. _____ |
| ARGONAUT GREAT CENTRAL INSURANCE COMPANY AND COLONY SPECIALTY INSURANCE COMPANY, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

~~PROPOSED~~

## ORDER

The Court has considered Plaintiff's Motion for Appointment of a Special

Process Server, and it appearing appropriate, just, and equitable, it is ORDERED

that Amy Ferrero, Christine O'Leary, and/or Katherine Bolling, who are agents of

Legal Ease Attorney Services, Inc., who are citizens of the United States, eighteen

years of age or older, and who are not interested parties in the above-captioned

matter, are hereby appointed special agents for service of a Summons and

Complaint, in this case upon the Defendants.

1/29/2021

SO ORDERED this ____day of _____, 2021.

_____
Judge
Gwinnett County Superior Court

Copy from re:SearchGA

Proposed Order Prepared by:

_/s/ Richard L. Robbins_
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
Catherine C. Berenato
Georgia Bar No. 957620
cberenato@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

_Attorneys for Plaintiff_

-2-

Copy from re:SearchGA

E-FILED IN OFFICE - LW
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**21-A-00667-8**
**2/1/2021 5:34 PM**

IN THE SUPERIOR COURT OF GWINNETT COUNTY
STATE OF GEORGIA

CLERK OF SUPERIOR COURT

**THE CITY OF ROSWELL, GEORGIA,**

**Plaintiff,**

**v.**

**ARGONAUT GREAT CENTRAL INSURANCE COMPANY AND COLONY SPECIALTY INSURANCE COMPANY,**

**Defendants.**

**CIVIL ACTION FILE NO. 21-A-00667-8**

## AFFIDAVIT OF SERVICE

COMES NOW AMY FERRERO, before the undersigned officer duly authorized to administer oaths and, after being duly sworn on oath deposes and states that she has been specially appointed by this Court for service of process per Order attached, she is a citizen of the United States, over the age of eighteen (18), and is a party having no interest in the above styled case, states that on January 29, 2021 at 1:21 PM, she served ARGONAUT GREAT CENTRAL INSURANCE COMPANY, by personally serving ALISHA SMITH, Corporation Service Company, Registered Agent, at her business located at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092, with SUMMONS and COMPLAINT.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of ___FEBRUARY___, 2021

Legal Ease Attorney Services, Inc.
645 Waldo Street
Atlanta, GA 30312
404-849-1240

Sworn to and subscribed before me
this ___ day of ___February___, 2021

Notary Public

My commission expires:

Copy from re:SearchGA

CLERK OF SUPERIOR COUR
GWINNETT COUNTY, GEORG
**21-A-00667-**
1/29/2021 12:35 PI

CLERK OF SUPERIOR COUR

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

THE CITY OF ROSWELL,
GEORGIA,                                    )
                                            )
        Plaintiff,                          )          CIVIL ACTION FILE
                                            )          **21-A-00667-8**
v.                                          )          NO. _____
                                            )
ARGONAUT GREAT CENTRAL                      )
INSURANCE COMPANY AND                       )
COLONY SPECIALTY INSURANCE                  )          **JURY TRIAL DEMANDED**
COMPANY,                                    )
                                            )
        Defendant.                          )

~~[PROPOSED]~~

## ORDER

The Court has considered Plaintiff's Motion for Appointment of a Special

Process Server, and it appearing appropriate, just, and equitable, it is ORDERED

that Amy Ferrero, Christine O'Leary, and/or Katherine Bolling, who are agents of

Legal Ease Attorney Services, Inc., who are citizens of the United States, eighteen

years of age or older, and who are not interested parties in the above-captioned

matter, are hereby appointed special agents for service of a Summons and

Complaint, in this case upon the Defendants.

### 1/29/2021
SO ORDERED this _____day of _____, 2021.

_____
Judge
Gwinnett County Superior Court

Copy from re:SearchGA

Proposed Order Prepared by:

*/s/ Richard L. Robbins*
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
Catherine C. Berenato
Georgia Bar No. 957620
cberenato@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

*Attorneys for Plaintiff*

Copy from re:SearchGA

E-FILED IN OFFICE - LW
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**21-A-00667-8**

**2/1/2021 5:34 PM**

CLERK OF SUPERIOR COURT

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

THE CITY OF ROSWELL, GEORGIA,

Plaintiff,

v.

ARGONAUT GREAT CENTRAL
INSURANCE COMPANY AND
COLONY SPECIALTY INSURANCE
COMPANY,

Defendants.

CIVIL ACTION
FILE NO. 21-A-00667-8

### AFFIDAVIT OF SERVICE

COMES NOW AMY FERRERO, before the undersigned officer duly authorized to administer oaths and, after being duly sworn on oath deposes and states that she has been specially appointed by this Court for service of process per Order attached, she is a citizen of the United States, over the age of eighteen (18), and is a party having no interest in the above styled case, states that on January 29, 2021 at 1:21 PM, she served COLONY SPECIALTY INSURANCE COMPANY, by personally serving ALISHA SMITH, Corporation Service Company, Registered Agent, at her business located at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092, with SUMMONS and COMPLAINT.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 1 day of FEBRUARY , 2021

Legal Ease Attorney Services, Inc.
645 Waldo Street
Atlanta, GA 30312
404-849-1240

Sworn to and subscribed before me
this 1 day of February 2021

Notary Public

My commission expires:

CLERK OF SUPERIOR COUR
GWINNETT COUNTY, GEORG
21-A-00667-
1/29/2021 12:35 PI

CLERK OF SUPERIOR COUR

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| THE CITY OF ROSWELL, GEORGIA, ) | |
| ) | |
| Plaintiff, ) | **CIVIL ACTION FILE** |
| ) | **21-A-00667-8** |
| v. ) | NO. _____ |
| ) | |
| ARGONAUT GREAT CENTRAL INSURANCE COMPANY AND COLONY SPECIALTY INSURANCE COMPANY, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |

~~[PROPOSED]~~

## ORDER

The Court has considered Plaintiff's Motion for Appointment of a Special

Process Server, and it appearing appropriate, just, and equitable, it is ORDERED

that Amy Ferrero, Christine O'Leary, and/or Katherine Bolling, who are agents of

Legal Ease Attorney Services, Inc., who are citizens of the United States, eighteen

years of age or older, and who are not interested parties in the above-captioned

matter, are hereby appointed special agents for service of a Summons and

Complaint, in this case upon the Defendants.

1/29/2021

SO ORDERED this \_\_\_\_day of _____, 2021.

_____
Judge
Gwinnett County Superior Court

Copy from re:SearchGA

Proposed Order Prepared by:

*/s/ Richard L. Robbins*
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
Catherine C. Berenato
Georgia Bar No. 957620
cberenato@robbinsfirm.com
Robbins Ross Alloy Belinfante Littlefield LLC
500 14th Street, N.W.
Atlanta, GA  30318
Telephone:  (678) 701-9381
Facsimile:  (404) 856-3255

*Attorneys for Plaintiff*

-2-

Copy from re:SearchGA